[No. 16985. *En Banc.* October 6, 1922.]

LILLIAN ALLISON, *as Administratrix etc., Respondent,*
v. HERMAN BARTELT *et al., Appellants.*[1]

MASTER AND SERVANT (172)—INJURY TO THIRD PERSONS—AUTOMO-BILES—NEGLIGENCE OF CHILD—SCOPE OF EMPLOYMENT. The owner of an automobile purchased for the convenience or pleasure of his family and driven by his minor son for pleasure, with his consent, express or implied, is liable for the death of a third person, killed through the son's negligent driving (MACKINTOSH and HOVEY, JJ., dissenting).

WITNESSES (125) — IMPEACHMENT — EXPLANATION OF INCONSIST-ENCY. Where, on an issue as to whether defendant's son was driving a car at the time of an accident, a witness had testified that he was not, and that her written statement to the contrary was untrue and pursuant to an agreement that the son should take the blame, it is not error to exclude redirect examination as to her motive and

[1]Reported in 209 Pac. 863.

whether she had talked about making the statement and had been urged to maintain the agreement.

TRIAL (66)—INSTRUCTIONS—COMMENT ON EVIDENCE. It is proper to refuse an instruction that verbal admissions testified to should be subjected to careful scrutiny and that no class of evidence was more subject to error.

DEATH (37)—DAMAGES—EXCESSIVE VERDICT. A verdict for $20,000 for the death of a husband, the father of two minor children, is not excessive, where his life expectancy was 26 years, he was the owner and lessee of orchard tracts, of good habits, fair education, and industrious, and doing the work of a horticulturist for which an equally efficient employee would cost $100 to $175 a month.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered November 2, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Turner, Nuzum & Nuzum* and *Ferris & Ferris,* for appellants.

*W. C. Losey* and *Tustin & Chandler,* for respondent.

MAIN, J.—This action was brought by the plaintiff, as administratrix of her deceased husband's estate, for the death of her husband, caused by negligence alleged to be chargeable to the defendants. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff in the sum of $20,000. At the conclusion of the plaintiff's evidence, the defendants moved for a directed verdict, which motion was overruled. After the return of the verdict, they moved for a judgment notwithstanding the verdict, and, in the alternative, for a new trial, both of which motions were likewise overruled. Judgment was entered on the verdict, and the defendants appeal. The respondent is the surviving widow of Audley B. Allison, deceased, and the action is brought by her in her own behalf and for the benefit of her two minor chil-

dren, aged, respectively, ten and thirteen years. The appellants are husband and wife and are the owners of a five passenger Jordan automobile.

On the afternoon of February 13, 1921, Roger Bartelt, the son of the appellants, aged approximately sixteen years, took the automobile and with three companions, two girls and a boy of about the same age as Roger, drove from the city of Spokane, where the appellants resided, to Liberty Lake. As they were returning therefrom that evening after dark, the automobile struck and killed Audley B. Allison, a short distance outside of the city of Spokane. The car at the time was traveling at a speed of approximately forty miles per hour, and the accident occurred just after this car had passed another automobile upon the highway. After the accident occurred, the car was driven by the young people to a point about two miles from the business section of Spokane, where they drove it against a telephone pole and left it there, and made up among themselves that they would say that the car had been stolen. After the accident they said, speaking of it, that Roger Bartelt was driving. They now say that they had made up among themselves that Roger was to take the blame and that they would all say that he was driving the car, even though Ray English, they now testify, was at the wheel. In answer to special interrogatories, the jury found that not Ray English but Roger Bartelt, the son of the appellants, was driving the car at the time of the accident, and that he had the car with the express or implied permission of the appellants.

The first and principal question is whether the appellants are liable for an accident which was due to the negligence of their son, there being no other member of the family in the car at the time. If they are

not liable, the motions for a directed verdict and for a judgment notwithstanding the verdict were well taken. On the other hand, if they are answerable for the minor son's negligence, these motions were properly overruled.

In support of their motions, the appellants challenged the soundness of the doctrine announced in *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59. In that case it was held that an owner of an automobile purchased for the use of his family was liable for a third person's injuries sustained by the negligence of his daughter using the car for her own pleasure with his consent, expressed or implied, since it was being used for one of the purposes for which the automobile was kept.

Since that case was decided, the same question has been before the courts of last resort of a large number of the states, approximately fourteen or fifteen of which have declined to adopt the doctrine of that case and have sustained a rule of nonliability. About an equal number have announced the same doctrine as that stated in *Birch v. Abercrombie, supra.* It is unnecessary here to numerically balance the cases accepting one view as against the other. We have again, however, reexamined the question and adhere to the doctrine of that case. The question there is fully discussed and there appears to be no reason why that discussion should be repeated or an attempt made to add to it at this time. The holding in that case will be sustained.

It is argued however, that there is no room in this case for the doctrine laid down in the *Birch* case, *supra,* because it is claimed that the car was not bought or maintained by the appellants for the convenience or pleasure of members of their family. The jury found,

in answer to a special interrogatory, as above stated, that the car at the time was being driven by the minor son of the appellants, with their expressed or implied consent. The question was properly submitted to the jury and there is ample evidence to sustain their finding, even though the appellants deny that the car was bought and maintained for any other purpose than that of business.

Another question relates to the offer and rejection of testimony. The respondent brought out on cross-examination of the witness Violet Comstock, one of the girls in the car, that she had made a written statement to one Mr. White which was in contradiction of her testimony given on the stand to the effect that Ray English and not Roger Bartelt was driving the car at the time of the accident. The appellants asked her on redirect examination whether she had talked to Ray English prior to her statement to Mr. White and whether English had urged her to maintain the agreement made by all the parties in the car at the time of the accident, which was to say that Roger Bartelt was driving the car. The court declined to permit the question to be answered, and later rejected an offer of proof on the same subject. The witness had already testified that the statements that they made after the accident, to the effect that Roger was driving the car were pursuant to the agreement made between them. The fact, if it is a fact, that prior to the time that this witness made a statement to Mr. White, she was urged by English to continue the story, would add little, if anything, to the motive which she had in telling what she now claims to be untrue. There was no error in rejecting this testimony.

There are a number of questions presented with reference to the instructions given and requests re-

fused. These have all been considered, but will not be reviewed here in detail. The instructions given properly cover the case as made by the pleadings and the evidence and correctly state the law applicable thereto. The instructions requested and refused, so far as they embody correct principles applicable to the case, are covered by those given. In one of the requests the court was asked to charge the jury in effect that verbal admissions, which had been testified to by certain of the witnesses, were evidence which should be subjected to careful scrutiny, as no class of evidence was more subject to error or abuse. There was more in the instruction requested to the same effect. To have given this request would have been error under the holding in *Gianini v. Cerini,* 100 Wash. 687, 171 Pac. 1007, and it was properly refused.

It is finally claimed that the verdict of the jury was excessive. The action, as already stated, was on behalf of the surviving widow and her two minor children. The deceased was the owner of a ten-acre orchard tract and had a lease upon a similar tract of land devoted to the same purpose. He did the work of looking after the orchards upon these two tracts of land and supervised the work of others when they were employed by him. He was a man of good habits, fair education, industrious, and had a good working knowledge as a horticulturist. The evidence shows that to employ a man to do the work that the deceased was doing prior to his death would cost from $100 to $175 a month, assuming that such an employee would do the work as efficiently as the owner. The appellants cite a number of cases upon this question, among which are *Harris v. Puget Sound Elec. R.,* 52 Wash. 289, 100 Pac. 838, and *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917. In the *Harris*

case, *supra,* a verdict for $15,000 for the death of a fore-man of a "bonder gang" on an electric railway, 41 years of age, earning $150 per month, with a wife and two children, was held not excessive. The earning capacity of the deceased in that case was substantially less than the evidence shows in this case, and estimated upon the basis of the earning capacity, the verdict in this case is no larger, approximately, than in that case. In the *Walters* case, *supra,* a verdict of $20,000 for the death of a railroad brakeman was held excessive and reduced to $15,000, where the deceased was 44 years of age, with an earning capacity of $100 to $120 per month, with a life expectancy of 25 years. In the present case, the life expectancy of the deceased at the time of his death was 26 years, approximately the same. The earning capacity of the deceased in that case was less than here. In addition to this, it is a matter of common knowledge that the purchasing power of money is less at the present time than when those cases were decided. In *McCreedy v. Fournier,* 113 Wash. 351, 194 Pac. 398, it was held that in determining damages for personal injuries, largely of a permanent character, it is necessary, to some extent, to "take into consideration factors and standards greatly differing from those prevailing only a few years ago." While the verdict is large, it is not in such an amount as to indicate passion and prejudice on the part of the jury, and therefore does not call for interference by the court.

The judgment will be affirmed.

Parker, C. J., Holcomb, Tolman, Bridges, Fullerton, and Mitchell, JJ., concur.

Mackintosh, J. (dissenting)—I do not consider the *Birch* case sound and think it should be overruled, and therefore dissent from the opinion in this case.

Hovey, J., concurs with Mackintosh, J.