[No. 31720. Department One. November 2, 1951.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRISON B. WASHINGTON, *Appellant.*[1]

[1]Reported in 236 P. (2d) 1035.

*Danz & Brain*, for appellant.

*Charles O. Carroll* and *John L. Vogel*, for respondent.

MALLERY, J.—The defendant appeals from a conviction of second-degree assault committed upon a police officer on October 15, 1950, in the Washington Social Club located at 23rd and East Madison streets, Seattle, Washington.

On the night in question, there were three to five hundred persons in the club, which had a seating capacity of about one hundred fifty. At about 3:30 a. m., someone had shouted "raid," whereupon a long line formed at the checkroom. There was some pushing and shoving. The police officer was standing in line preparatory to going off duty. He noticed a disturbance created by appellant, who was elbowing up toward the front of the line. He admonished appellant to "take it easy." The appellant then turned and cursed him. The officer placed his hand on the appellant's left upper arm. The appellant then pivoted into him and he felt a tearing sensation. He jumped away, looked down, and saw a hunting knife, which became state's exhibit No. 1, in the appellant's right hand. He had received a cut on the left chest one and one-half to two inches in length. The knife was stopped by the lower left rib. The assaulted officer and another officer twisted appellant's arm, causing the knife to drop to the floor, from where it was picked up by an Army M. P., and turned over to the officer.

The trial court received the verdict of the jury in the absence of counsel for appellant. This is assigned as error.

The case was submitted to the jury at about 4:15 p. m. Counsel for the appellant left his office and residence tele-

phone numbers with the bailiff, so that he could be called when the jury had reached a verdict. Counsel left the courtroom at about 4:40 p. m., and went to his office, where he remained until 5:15 p. m. He then left his office and went home, arriving there about one-half hour later. In the meantime, at about 5:25 p. m., the bailiff had called counsel's office and home and was unable to reach him. This information was communicated to the trial judge, who, thereupon, received the verdict without the presence of appellant's counsel. No one prevented him from being present.

■ The arrangement mentioned had been made for the convenience of counsel, who, by it, made the bailiff his agent. See *Fitzgerald v. Clark*, 17 Mont. 100, 42 Pac. 273. His absence was nonetheless voluntary, because he intended to return for the verdict. In *State v. Hardung*, 161 Wash. 379, 297 Pac. 167, it was held that counsel's right to be present, when a verdict is received, can be waived. The voluntary absence of counsel constitutes such a waiver. *Lovvorn v. Johnston*, 118 F. (2d) 704. Counsel's voluntary absence from the courtroom cannot be permitted to paralyze the proceedings of courts and juries. See *Diaz v. United States*, 223 U. S. 442, 56 L. Ed. 500, 32 S. Ct. 250. Counsel suits his convenience in such a case at the risk of his agent being unable to contact him.

■ The sound discretion of the court, on the question of how long to wait for counsel to appear before receiving a verdict, will not be disturbed. There was no error committed.

■ The court refused to give appellant's requested instruction No. 1, which reads as follows:

"You are instructed that in weighing the testimony of a witness you are to give no more weight to the testimony of a police officer than to any other witness, merely because he is a police officer."

Counsel for appellant assumed that the instruction would be given, and claims to have exercised his peremptory challenges with that in mind. The trial court gave a clear stock instruction directed to the credibility of all witnesses. Such

a general instruction accords well with the spirit of the constitutional provisions, which make the jury the finder of the facts. To instruct the jury who to believe or disbelieve would amount to a finding of fact. Instructions on credibility, directed to particular witnesses, rather than special categories such as accomplices, experts, etc., can have no purpose other than to influence the jury one way or the other in finding the facts. The better practice is to give a general instruction on credibility, as was done in this case. It was not error to refuse the requested instruction. See *State v. Miller*, 72 Wash. 174, 130 Pac. 356.

The court refused to give appellant's requested instruction No. 5, which reads as follows:

"You are instructed that if you find from the evidence that the circumstances surrounding the assault were such that the police officers involved were confused or mistaken as to the identity of the person committing the assault, then this fact should be taken into consideration by you in arriving at your verdict."

Appellant did not take the stand on his own behalf, did not rely upon an alibi, and depended entirely upon the theory of a mistaken identification of the knife wielder by the officers. The court was justified in declining to give this instruction, which adds nothing to the instructions that were given on reasonable doubt and the burden of proof.

■ Appellant had caused a subpoena *duces tecum* to be served upon the chief of police, who, so far as we can determine from the record, was present in court with the things included in the subpoena. The subpoena does not appear in the transcript, nor are we able to tell from the record anything about the nature of the things sought to be reached by it. This factual vacuum prevents our consideration of the assignment of error directed to it.

The judgment is affirmed.

HILL, GRADY, DONWORTH, and WEAVER, JJ., concur.