Submitted on briefs February 4, affirmed February 23, 1926.

# EVA FOSTER, A MINOR, *v.* WALTER H. FARRA, ET AL.

## (243 Pac. 778.)

**Automobiles—Statute Condemns Use of Automobile Without Sufficient Brakes (Laws 1921, p. 707, § 3, Subds. 1, 5c, and § 2, Subd. 18).**

1. Laws of 1921, page 707, Section 3, subdivisions 1, 5c, and Section 2, subdivision 18, condemns use of automobile upon streets or highways without sufficient brakes to control it as a dangerous instrumentality.

**Automobiles—Negligence for Owner of Unmanageable Automobile to Allow Another to Use It on Highway.**

2. An automobile which is knowingly unmanageable is such a dangerous instrumentality that it is negligence for owner to allow its use by another upon the highway.

**Automobiles—Owner Violated Statute in Permitting Son to Use Automobile Equipped With Defective Brakes and Steering Gear (Laws 1921, p. 707, § 3, Subds. 1, 5c, and § 2, Subd. 18).**

3. Owner of automobile violated Laws of 1921, page 707, Section 3, subdivisions 1, 5c, and Section 2, subdivision 18, in permitting his son to use automobile which had defective brakes and steering gear.

**Automobiles—Owner Keeping Automobile for Use of Family Liable for Negligent Operation When so Used.**

4. One who keeps an automobile for the pleasure and convenience of himself and family is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family.

**Automobiles—Use of Automobile, Provided for Recreation Purposes by Member of Family, is Within Scope of Father's Business.**

5. Where a father provides automobile for purpose of furnishing members of his family with outdoor recreation, the use of the car for such purpose is within the scope of father's business.

---

2. Automobile as inherently dangerous, see note in 19 Ann. Cas. 1229.

4. Liability of parent owning car for act of child driving it, see notes in Ann. Cas. 1914C, 1091; Ann. Cas. 1916A, 661; Ann. Cas. 1917D, 1002; Ann. Cas. 1918E, 1137.

Liability of owner under "family purpose" doctrine for injuries by automobile while being used by a member of his family, see notes in 10 A. L. R. 1449; 14 A. L. R. 1087; 19 A. L. R. 387; 20 A. L. R. 1469; 23 A. L. R. 620; 32 A. L. R. 1504.

Automobiles—Ownership of Automobile Operated by Another Constitutes Prima Facie Case for Jury of Principal's Liability for Negligence.

6. Ownership of automobile operated by another constitutes *prima facie* case for jury of principal's liability for injuries negligently inflicted in driving machine, although for purposes of his own, even though the agency is not business agency.

Automobiles—Son's Use of Automobile in Driving to School With Father's Permission Held for Family Purpose.

7. Minor son's use of automobile, with father's permission, in driving to place where he was attending school may well be considered a family use of the car.

Automobiles—Evidence of Son's Use of Automobile for Family Purpose Held for Jury.

8. Evidence *held* sufficient to go to jury as to whether owner's minor son was operating automobile at time of injury with express or implied authority of his father as his agent for a family purpose.

Automobiles—Requested Instruction Properly Refused as Relieving Owner of Responsibility for Permitting Use of Defective Automobile.

9. In action for personal injuries, instruction that owner of automobile was not liable, unless driver was negligent, was properly refused as relieving owner of responsibility for permitting use of car on public streets and highways in a defective and dangerous condition.

Automobiles—Instruction That Ownership of Automobile was Sufficient Prima Facie Evidence of Negligence Held not to Cast Burden of Proof on Owner, but Merely Duty of Going Forward With Evidence.

10. Instruction that it was sufficient *prima facie* evidence that negligence was imputable to owner of automobile to show ownership *held* not to cast burden of proof on defendant, but was merely duty of going forward with evidence.

Evidence—When Prima Facie Case is Established, Burden of Evidence Shifts, but Burden of Proof not Affected.

11. When a *prima facie* case is established, burden of evidence is shifted to party who has not affirmative of issue, although burden of proof is not affected, and burden of evidence returns to the party having burden of proof if other party can impair *prima facie* quality of case against him.

Exceptions, Bill of—Bill Should Definitely Point Out Instructions Given Over Objection and Exceptions and Rulings on Evidence Excepted to.

12. Bill of exceptions should point out instructions given over objection and exceptions in definite manner either by number or by quoting part to which exception was reserved, and should point out specific rulings upon the admission or rejection of testimony to which exceptions are reserved.

Automobiles—Instructions Held Properly Refused as Confusing and
    Intended to Reject Family Purpose Doctrine.

13. Requested instruction that before verdict could be found
against father they must find son who drove car injuring plaintiff
was father's agent, performing some business and service on his
behalf, *held* properly refused as tending to confuse jury and intended
to reject the family purpose doctrine.

Automobiles—Owner's Admission in Answer as to Family Relation-
    ship and Parental Control Over Son Driving Automobile Lessened
    Facts to be Proved by Plaintiff.

14. In action against owner of automobile for injuries caused
by son who drove car, answer admitting family relationship and
control over minor son, and ownership of car, "and that the same
was bought for his own convenience and for business purposes," *held*
to lessen the facts necessary to be proved by plaintiff.

---

Appeal and Error, 3 C. J., p. 1330, n. 44, p. 1370, n. 33, p. 1378,
n. 66; 4 C. J., p. 1129, n. 60.
    Dangerous, 17 C. J., p. 1128, n. 74.
    Evidence, 22 C. J., p. 78, n. 18, 19, 20.
    Motor Vehicles, 28 Cyc., p. 34, n. 88, p. 37, n. 19, p. 38, n. 29,
p. 39, n. 36 New, p. 45, n. 90, p. 47, n. 20, p. 48, n. 39, p. 49, n. 49.
    Pleading, 31 Cyc., p. 676, n. 45.
    Trial, 38 Cyc., p. 1557, n. 24, p. 1578, n. 59, p. 1602, n. 57,
p. 1749, n. 98.

From Josephine: C. M. THOMAS, Judge.

In Banc.

This is an action for damages for personal in-
juries. The case was tried before the court and a
jury and a verdict rendered in favor of plaintiff and
against defendants Walter H. Farra and Herman
Farra. From a resulting judgment these two de-
fendants appeal. As no judgment was rendered
against defendant Mrs. Effie Farra, we will omit
her name in stating the case.

The gist of the allegations of the complaint is,
that at the time of the alleged injury, the defendant
Walter H. Farra was the owner of a 1920 model
Dodge touring automobile, purchased by him for the
convenience, pleasure, business and family purposes
of each of the defendants. That on and prior to the

twenty-third day of February, 1922, Walter Farra negligently and wantonly permitted said automobile to get and remain in a bad state of repair, in that the foot-brake became unserviceable and the emergency-brake would not work, and the steering gear was difficult to operate and was defective; that Walter H. Farra, well knowing of said defects, and well knowing that the operation of the car by anyone on the streets and highways was dangerous to the lives of pedestrians and others, wantonly, negligently and carelessly permitted Herman Farra, the minor son, to take the automobile and drive the same in said defective condition over the streets of Grants Pass, Oregon, knowing that said minor could not operate the same in its defective condition with safety to the public.

On the twenty-third day of February, 1922, Eva Foster, a child eleven years of age, having just come from an entertainment at the Rivoli Theater in Grants Pass, Oregon, while standing on the sidewalk a few feet from the theater, was violently struck by, and impaled upon, the front of said automobile, carried and mashed against the concrete side of said Rivoli Theater and severely injured. That the car owned by Walter Farra was then driven and operated unlawfully, wantonly, recklessly and carelessly by the said Herman Farra for the use and purposes for which it was intended; that Herman Farra, while driving said automobile down 6th Street, suddenly turned to the left near said theater in wanton and reckless indifference to plaintiff's rights, and despite the crowd that was crossing the street at that time did not and could not lessen his speed by the application of brakes, but whirled suddenly and bore down upon the said Eva Foster, who was struck by

the dangerous agency without warning or oppor-
tunity to escape, and injured to her damage.

The defendant Walter Farra answering, admits
that Herman Farra is a minor son of defendants
Walter Farra and Effie Farra, and at the time of
the accident the parties were living together as a
family and this defendant exercised parental control
over his son, Herman Farra.

Defendant admits the ownership of the car and
that the same was bought by him for his "conveni-
ence and for business purposes," and denies most
of the other allegations of the complaint, except that
the defendant has been informed that the said Eva
Foster was struck by the automobile and sustained
some injuries.

In a further and separate answer this defendant
avers that upon the occasion referred to, Herman
Farra was using the car for a purpose of his own
"and was not using said car for any business, con-
venience, pleasure, or other purpose of this answer-
ing defendant." Appellants state that the separate
answers filed by Effie and Herman Farra are omitted
as unnecessary in the consideration of this appeal.
Plaintiff replied to the separate answers, putting in
issues the new matters thereof.        AFFIRMED.

For appellants there was a brief over the names
of *Mr. James T. Chinnock* and *Mr. Gus Newbury.*

For respondent there was a brief over the name
of *Mr. O. S. Blanchard.*

BEAN, J.—It is stated in defendants' brief, among
other things, in substance as follows:

The defendant Walter H. Farra was in 1922 the
owner of a Dodge touring car. He lived upon a

ranch about ten miles south of Grants Pass. His son, Herman Farra, was at the time of the accident a minor, aged seventeen years. Walter H. Farra purchased the car for business purposes. It was contended by this defendant that there is no evidence that this car was purchased or kept for other than business purposes, or that it was kept or ever used for so-called family purposes or pleasures.

On February 22d, the defendant Herman Farra went to the ranch and asked his father for the use of the car to take some of his boy friends to a ball game at Murphy, about seven miles south of Grants Pass, and near the Farra ranch. The father gave his permission, as he claims, with the understanding that when the ball game was over Herman would bring the car home. Herman then drove the car to the ball game and that night went into Grants Pass, where he was attending high school, and after school the next day invited two girl friends to go with him in the car to the Rivoli Theater in Grants Pass.

The Rivoli Theater is situated on the northeast corner of 6th and E Streets in Grants Pass. Herman was driving the car south on 6th Street, toward the intersection of 6th and E Streets. As he approached the intersection a large crowd of people came out of the theater and commenced crossing the street. "He commenced to turn the car at the intersection, held out his hand to signal his intention to turn, sounded his horn, and slowed up, and in the course of this turn the accident occurred."

The testimony tended to show that Herman drove down the main street "pretty fast" and instead of passing the Rivoli Theater, as many expected, suddenly turned to the left and crashed into the crowd, barely missing some, scattering all, knocking down

several, turned obliquely to the left again, jumping the curb next to the Rivoli Theater, and impaled the plaintiff on the bumper, mashing her against the concrete side of the theater building, breaking her bones, tearing ligaments and disfiguring her for life. She was struck while on the sidewalk.

The testimony also tended to show that there was no foot-brake on the car and that the emergency-brake was of little effect and was not sufficient to control the car and would not stop the car within a reasonable distance; that the steering gear was defective and it was difficult to turn the car. And that the car had been in that condition for two or three days. When they would attempt to put on the brakes and stop the car it would shoot ahead. Herman Farra testified:

"I didn't notice the show was let out and they crowded out into the street and that startled me some and I started to put on the brakes to stop the car and it went on and hit the girls."

It will be seen that the issues involve two allegations of negligence: the defective condition of the car and also the operation of the same at the time of the accident.

It will, perhaps, be better to notice the law in regard to both features of the case. Chapter 371, Section 3, subdivision 1, of the General Laws of Oregon of 1921, page 714, provides as follows:

"Equipment I.    Brakes.—Every motor vehicle, except motorcycles, operated or driven upon the highways of this state shall be provided with two sets of brakes, operating independently, sufficient to control the vehicle at all times.    Motorcycles shall have at least one brake capable of complying with the foregoing requirement."

Subdivision 5 (c) of the same section provides in part thus:

"The failure on the part of the owner thereof to equip any such motor vehicle, trailer, semi-trailer, motorcycle or other vehicle, as provided herein, shall be *prima facie* evidence of an intent to violate the provisions of this act."

Section 2 of the same act, subdivision 18, reads thus (page 712):

"No vehicle shall be moved, run or operated on the roads, streets or highways of this state by any person unable to control and properly operate the same with due regard to the safety of the public and other vehicles; provided, that in all cases any person in a state of intoxication is deemed conclusively to be unable to control and operate the same."

1. The undisputed evidence in this case shows that the automobile, which was the instrumentality which caused the injury complained of, was not equipped with two brakes sufficient to control the vehicle at the time of the accident, and that the defendant Walter H. Farra knew, or ought to have known, of the defective condition of the machine. The statute, in effect, condemns the automobile as a dangerous instrumentality when used upon the streets or highways of the state.

2, 3. In permitting his son, Herman Farra, to use the automobile in the condition it was in at the time of the accident, the defendant Walter H. Farra, violated both the letter and the spirit of the statute and was guilty of negligence. An automobile, which is knowingly unmanageable, is such a dangerous instrumentality that it is negligence to allow its use on the highway: *Texas Co.* v. *Veloz* (Tex. Civ. App.), 162 S. W. 377; *Allen* v. *Schultz,* 107 Wash. 393 (181 Pac. 916); *Moore* v. *Roddie,* 106 Wash. 548 (180 Pac.

879); *Gardner* v. *Solomon*, 200 Ala. 115 (75 South. 621, L. R. A. 1917F, 380).

In *Parker* v. *Wilson*, 179 Ala. 361 (60 South. 150, 43 L. R. A. (N. S.) 87, it is said at page 153:

"In the case of a mere permissive use, the liability of the owner would rest, * * upon the combined negligence of the owner and the driver, negligence of the one in entrusting the machine to an incompetent driver, of the other in its operation."

*Allen* v. *Schultz, supra,* is authority for the following:

"One who operates on the streets of a city such a dangerous instrumentality as an automobile is bound to take notice that he may be called upon to make emergency stops, and it is negligence on his part not to keep the automobile in such condition that such stops are possible."

*Texas Co.* v. *Veloz, supra,* holds as follows:

"Where an automobile is out of repair so as to be unmanageable it is such a dangerous instrumentality that it is negligence to allow its use on the highways; the owner is liable for an injury caused by an operation of the car though his agent in charge thereof is not negligent."

In *Gardiner* v. *Solomon, supra,* it was held that the owner of an automobile is liable for injury inflicted on a pedestrian by his adult son in the use of the machine under circumstances where the doctrine of *respondeat superior* would not apply, if the son was, to the knowledge of the owner, incompetent to handle the machine with safety. In the case at bar, the defendant Walter H. Farra permitted his minor son to use an automobile and to drive the same upon the streets of Grants Pass, when the vehicle was in a defective and dangerous condition to be driven on the highway. The machine in such

condition was an inherently dangerous instrumentality.

4, 5. As to the other feature of the case, relating to the management of the automobile by the minor son of the defendant Walter H. Farra, while there is a contrariety of opinion upon the question, the rule adopted in several states is, that one who keeps an automobile for the pleasure and convenience of himself and his family is liable for injuries caused by the negligent operation of the machine while it is being used for the pleasure or convenience of a member of his family. As to whether the son was engaged in the father's business, it is the rule, supported by the better weight of authority, that where a father provides an automobile for the purpose of furnishing members of his family with outdoor recreation, the use of the car for such purposes is within the scope of the father's business, analogously to the furnishing of food and clothing or ministering to their health: Berry, Automobiles (4 ed.), p. 1148, § 1280; *Benton* v. *Regeser*, 20 Ariz. 273 (179 Pac. 966); *Hutchins* v. *Haffner*, 63 Colo. 365 (167 Pac. 966, L. R. A. 1918A, 1008); *Stickney* v. *Epstein*, 100 Conn. 70 (123 Atl. 1); *Graham* v. *Page*, 300 Ill. 40 (132 N. E. 817); *Arkin* v. *Page*, 287 Ill. 420 (123 N. E. 30, 5 A. L. R. 216); *Napier* v. *Patterson*, 198 Iowa, 257, (196 N. W. 73); *Baldwin* v. *Parsons*, 193 Iowa, 75 (186 N. W. 665); *Rowland* v. *Spalti*, 196 Iowa, 208, (194 N. W. 90); *Doss* v. *Monticello Elec. L. & P. Co.*, 193 Ky. 499 (236 S. W. 1046); *Miller* v. *Weck*, 186 Ky. 552 (217 S. W. 904); *McMahon* v. *Flynn*, 154 Minn. 326 (191 N. W. 902); *Johnson* v. *Schuler*, 152 Minn. 137 (188 N. W. 271); *Richardson* v. *Weiss*, 152 Minn. 391 (188 N. W. 1008); *Emanuelson* v. *Johnson*, 148 Minn. 417 (182 N. W. 521); *Plasch* v. *Fass*, 144 Minn.

44 (174 N. W. 438, 10 A. L. R. 1446); *Linch* v. *Dobson*, 108 Neb. 632 (188 N. W. 227); *Stevens* v. *Luther*, 105 Neb. 184 (180 N. W. 87); *Boes* v. *Howell*, 24 N. M. 142 (173 Pac. 966, L. R. A. 1918F, 288); *Wallace* v. *Squires*, 186 N. C. 338 (119 S. E. 569); *Ulman* v. *Lindeman*, 44 N. D. 36 (176 N. W. 25, 10 A. L. R. 1440); *Vannett* v. *Cole*, 41 N. D. 260 (170 N. W. 663); *Dillingham* v. *Teeter*, 91 Okl. 165 (216 Pac. 463); *Crouse* v. *Lubin*, 260 Pa. St. 329 (103 Atl. 725); *Mooney* v. *Gilreath*, 124 S. C. 1 (117 S. E. 186); *King* v. *Smythe*, 140 Tenn. 217 (204 S. W. 296, L. R. A. 1917F, 293); *Allison* v. *Bartelt*, 121 Wash. 418 (209 Pac. 863); *Birch* v. *Abercrombie*, 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. (N. S.) 59); *Jones* v. *Cook*, 90 W. Va. 710 (111 S. E. 828); *Aggleson* v. *Kendall*, 92 W. Va. 138 (114 S. E. 454); *Denison* v. *McNorton*, 228 Fed. 401 (142 C. C. A. 631).

In *Linch* v. *Dobson*, 108 Neb. 632 (188 N. W. 227), it was said:

"Where the car is kept for the use and pleasure of the family, and one member of the family is using it for his individual pleasure, or for one of the family purposes for which it is kept, it comes strictly within the reason of the rule that, in such use, the member of the family is acting as the agent, in furthering the purposes of the owner as truly as though other members of the family were in the car with him, and that the owner can be held responsible for damages resulting from the negligent operation of the car while so used."

In an annotation found in 5 A. L. R., page 226 et seq., in discussing the "family-purpose" doctrine we read:

"This doctrine holds the owner of an automobile, which was purchased and maintained for the pleasure of his or her family, liable for injuries inflicted by

the machine while it is being used by members of the family for their pleasure, on the theory that the car is being used for the purpose or business for which it was kept, and that the person operating it is, therefore, acting as the owner's agent or servant in using it.''

In an annotation in 19 A. L. R., page 387, we read a quotation from the opinion in the case of *Lacey* v. *Forehand*, 27 Ga. App. 344 (108 S. E. 247), as follows:

''The conclusion which is arrived at—and we think it is a sound one—is that the scope of the employment is necessarily dependent on the circumstances, and that no hard and fast rule can be laid down; but that it is ordinarily a question for the jury whether or not a particular act falls within the scope of the servant's employment, or that of a minor child. In the present case the facts admitted by the defendant show that the bringing of his minor son home was regarded by him as a part of his parental duty, and for that purpose he made the furnishing of the automobile his affair.''

On page 389 of the same volume, we read in a quotation from *Graham* v. *Page*, 300 Ill. 40 (132 N. E. 817), the following:

. ''The weight of authority supports the liability of the owner of a car which is kept for family use and pleasure, where an injury is negligently caused by it while driven by one of his children by his permission, and the reasoning of those cases seems sound and more in harmony with the principles of justice. We agree with the supreme court of Tennessee that, where a father provides his family with an automobile for their pleasure, comfort, and entertainment, 'the dictates of natural justice should require that the owner should be responsible for its negligent operation, because only by doing so, as a general rule, can substantial justice be attained.' ''

In 20 A. L. R. 1469, we read in a quotation from the case of *Jones* v. *Cook*, 90 W. Va. 710 (111 S. E. 828):

"We see no possible ground of difference concerning the owner's liability, whether there be but one member of the family or all the members of the family in the automobile at the time of the negligent injury. If the father makes it his business or affair to furnish members of his family with an automobile for family use, and he maintains it for that purpose, just the same as it is his business to furnish them with food and clothing or to minister to their health in other ways, then he is in the furtherance of that business just as surely, when a single member of the family is driving it for his own pleasure and convenience, as if all the family were riding in it."

The "family-purpose" doctrine was applied in cases of horse-drawn vehicles, decided before the advent of the automobile. It is not an addition to the law of agency. It is simply applying old principles to new conditions. This doctrine puts the financial responsibility of the owner behind the automobile in furtherance of the business and purposes for which it is maintained. It is sustained by reason and by an apparent weight of authority: *Schaefer* v. *Osterbrink* (1886), 67 Wis. 495 (30 N. W. 922, 58 Am. St. Rep. 875); *Lashbrook* v. *Patten* (1864), 1 Duv. (Ky.) 316.

The testimony in the present case indicated, and the jury was warranted in finding, that the automobile in question was kept by the defendant Walter H. Farra for the convenience and use of his family. The fact that a portion of the time the defendant may have used the car for business purposes would not alter the principle. The defendant, Herman Farra, had been seen driving the car on the streets

of Grants Pass on several occasions. The day before the accident his father had permitted him to take the car for the purpose of conveying some of his boy friends from Grants Pass to Murphy, to attend a basket-ball game, which he did, and then returned with the boys to Grants Pass and attended school on the day of the accident. After school hours he was driving on the streets of Grants Pass with two girls who lived in the neighborhood of the Farras, when the accident happened.

6. In this state it has been held that the ownership of an automobile operated by another constitutes a *prima facie* case for the jury of the principal's liability for injuries negligently inflicted by the agent in driving a machine of which he had general charge although for purposes of his own, and that these facts make a *prima facie* case even though the agency was not a business agency: *Doherty* v. *Hazelwood Co.,* 90 Or. 475 (175 Pac. 849, 177 Pac. 432); *West* v. *Kern,* 88 Or. 247 (171 Pac. 413, L. R. A. 1918D, 920); *Clark* v. *Jones,* 91 Or. 455 (179 Pac. 272). See also annotations in 10 A. L. R. 1449, 14 A. L. R. 1087, 20 A. L. R. 1496, and 23 A. L. R. 620.

7, 8. The defendant Walter H. Farra assigns error of the trial court in refusing to grant his motions for a nonsuit and for a directed verdict, and in support of his motions contends that there was no evidence that the automobile was used for family purposes. With this contention we are not able to agree. The actual use of the car as shown by the testimony indicates that the car was and had been for some time used for the convenience of the family. It was one of the parental duties of the defendant, Walter H. Farra, to educate his minor son Herman, and

the use of the car by Herman in driving to Grants Pass, where he was attending school, with the permission of his father, was in connection therewith and may well be considered a family use of the machine. It seems that the son kept the car in Grants Pass on the last day of school for that week in order to drive home for the week-end and to avoid his father driving in for him, and that this was the reason why he kept the car after taking his boy friends to the ball game, with the consent of his father, and then returning them to Grants Pass. Herman, having had express permission from his father to drive the car to Grants Pass, he would not be restricted from driving the car upon any certain street. The jury was warranted in finding that at the time of the accident Herman was operating the car with the express or implied authority of his father. We notice no evidence of any other kind of use of the car, except for family purposes, made by defendant. There was ample evidence to take the case to the jury, and the motion for a nonsuit, and the motion for a directed verdict, were properly denied.

Defendant criticises the complaint and argues that it does not aver that Herman Farra was the agent of his father. All the facts constituting such an agency are set forth in the pleading. The complaint showed and the proof indicated that the car was kept for the convenience and pleasure of the family and that at the time of the accident the minor son of defendant was with the consent of his father operating the car for the purpose for which it was kept, on the streets of Grants Pass, in its dangerous and defective condition; therefore, the jury was warranted in finding that Herman was acting as the agent of his father, the owner of the car.

The court charged the jury in part as follows:

"The plaintiff contends that the defendant Herman Farra was at the time of the accident using the automobile for family purposes. The law is that whenever the vehicle is obtained to carry out the general purpose for which the owner keeps it, and anyone driving such machine with the owner's consent, express or implied, is the owner's agent.

"In this case, if you find from the evidence that the automobile was obtained by Herman Farra to carry out the general purpose for which his father, Walter H. Farra, kept it, and that said automobile was at the time of the accident being driven with the consent of the owner, Walter H. Farra, which consent may be either express or implied, then the said Herman Farra was the agent of the owner at the time of the said accident.

"If you find from the evidence that said Herman Farra was the agent of the father under the rules just recited, and you further find against the defendants under the prior law as previously outlined then you will proceed to a consideration of the question of damages.

The court also charged the jury to the effect that:

"The law is that when the plaintiff has suffered injury from negligent management of a vehicle, such as an automobile, it is sufficient *prima facie* evidence that the negligence was imputable to the defendant, to show that he was the owner of the car * * ."

And that the defendant could then go ahead and show that the operator of the car was not his agent and the car was not in his control at the time. The court also instructed the jury in conformity to the statute above referred to concerning the equipment and control of an automobile. The court further charged the jury, in effect, that to entitle plaintiff to recover, all the elements of the case must be "established by a preponderance of the evidence."

9. The defendant Walter H. Farra reserved exceptions to the instructions of the court to the jury as follows:

To the failure of the court to give defendants requested instructions; and to the failure to instruct that: "If you find that the defendant Herman Farra was upon the occasion of the accident negligent, that then and in that event only, Herman Farra shall be held liable to any damages that may be sustained— that might have been sustained." This quoted request would relieve defendant Walter H. Farra of all responsibility for permitting the the use of his car on the public streets and highways in a defective and dangerous condition and was properly refused.

This defendant further excepted "to the instruction of the court given with reference to the ownership, convenience, and use of the car," for want of evidence and for the reason that "Herman Farra was upon an exclusive business of his own and that the instruction is contrary to law."

10. The defendant contends that the charge of the court cast the burden of proof upon the defendant. We do not so understand the charge. The purport of the instruction is that after the plaintiff had established a *prima facie* case, the duty of going forward with the evidence devolved upon the defendant.

11. When such a *prima facie* is established, the burden of evidence is shifted to the party who has not the affirmative of the issue, although the position of the burden of proof is in no way affected. If the party who has not the affirmative of the issue can impair the *prima facie* quality of the case against him, the burden of evidence thereupon returns to the party having the burden of proof: 22 C. J., § 21.

The instruction in regard to a *prima facie* case was in conformity with the case of *West* v. *Kern,* 88 Or.

247, 253 et seq. (171 Pac. 413, 1050, L. R. A. 1918D, 902). In this case, Mr. Justice HARRIS, after reviewing the authorities, concludes in the following words:

"We adhere towards the doctrine to which the opinion in *Kahn* v. *Home Tel. & Tel. Co.,* 78 Or. 308 (152 Pac. 240), inclines, and which the opinion in *Houston* v. *Keats Auto Co.,* 85 Or. 125 (166 Pac. 531), pronounces, and we hold that proof of ownership makes a *prima facie* case against the owner."

In *Houston* v. *Keats Auto Co.,* 85 Or. 125 (166 Pac. 531), this court, speaking by Mr. Justice McCAMANT, on page 130, said:

"The admission of ownership made by the defendants in the case at bar was therefore sufficient to make out a *prima facie* case on the controverted questions."

See, also, *Doherty* v. *Hazelwood Co.,* 90 Or. 475, 479 (175 Pac. 849, 177 Pac. 432). The instruction above quoted in regard to using the automobile for family purposes was strictly in conformity with the law stated in the foregoing authorities and we think the ruling in *West* v. *Kern* and *Houston* v. *Keats,* *supra,* in principle, practically tends to adopt the "family-purpose" doctrine. There are several respectable authorities which do not adopt the "family-purpose" doctrine in its broadest sense. The precedents on the two sides of this question cannot be reconciled.

The defendants also requested the court to instruct the jury to the effect that before they could find a verdict against Walter H. Farra, they must find that Herman was the agent of Walter Farra at the time of the injury complained of and that the defendant, Herman Farra, was doing and performing some busi-

ness and service for and on behalf of the defendant, Walter Farra.

12. The exceptions reserved to the instructions of the court to the jury are very general. They are probably sufficient as a memorandum upon the trial of the case. The bill of exceptions should point out just what instruction is given over the objection and exceptions of the party complaining, and refer to the same in a definite manner, as by number, or quote the part to which the exception is reserved. And also what specific rulings upon the admission or rejection of testimony exceptions are reserved. This,. in order that the court will not be required to examine the whole charge, or record, to determine what assignments of error are relied upon. This the court cannot do. There is a controversy between the parties as to what instructions an exception was taken. The charge plainly presented the case to the jury under the law as we have stated it above, and with the other instructions given was all that was necessary.

13. The requested instructions of the defendant, while not wholly in conflict with the charge given, would tend to confuse the jury and as we understand them, were intended to reject the "family-purpose" doctrine. In so far as the requested instructions were not covered by or given in the charge, they were properly refused. The charge to the jury was favorable to the defendants. It does not seem possible that the jury could have misunderstood the charge in regard to the burden of proof being upon the plaintiff.

14. It is stated in defendants' brief—"the defendant, having admitted ownership, the duty of going forward with the proof rested upon defendant * * ,"

but the burden of proof rests upon the plaintiff to satisfy the jury by a preponderance of the evidence. This, in substance, is what the court charged the jury was the *quantum* of proof required to establish every element of the case.   Of course the facts to be proved by plaintiff were lessened by the admissions of defendant in his answer.   Defendant Walter H. Farra admits the family relationship of the three defendants and his parental control over the minor son Herman; and admits that at the time he was the owner of the motor vehicle in question ''and that the same was bought by him for his *convenience* and for business purposes.''

There is but very little difference between the averment of the complaint and the admission in the answer, in regard to the purpose for which the car was maintained.   The word ''convenience'' as used in defendants' answer might be considered to have a very broad meaning.   It would no doubt be for the defendants' convenience to use the car for general family purposes.   The testimony tended to show that it was so used.   The defendant, Walter H. Farra, did not testify in the case, but the testimony on the part of plaintiff indicated that this defendant and his wife had been seen riding in the car in the City of Grants Pass, and that the two sons had frequently driven it on the streets of that city.

The defendants' version as to the purpose for which the car was kept, and the circumstances relating to the operation of it on the day of the accident, was testified to by Herman as a witness.   The issues and claims of the respective parties were carefully explained by the learned trial judge and the whole matter fairly submitted to the jury.

117 Or.—20

We have examined other assignments of error than those mentioned, but find no merit in them.

After a careful examination of the record, we find no reversible error therein. The judgment of the Circuit Court is therefore affirmed.          AFFIRMED.

BURNETT, J., concurs in the result.